759 So.2d 709 (2000)
Dezso SZURI, Appellant,
v.
Gizella SZURI, Appellee.
No. 3D98-1160.
District Court of Appeal of Florida, Third District.
April 26, 2000.
Rehearing Denied June 14, 2000.
*710 Anthony S. Paetro, Bay Harbor Island; Cynthia L. Greene, Miami, for appellant.
Gizella Szuri, in proper person.
Before GERSTEN, GODERICH, and SHEVIN, JJ.
GERSTEN, J.
Former husband Dezso Szuri ("Former Husband") appeals an alimony modification award entered 24 years after dissolution which increased former wife Gizella Szuri's ["Former Wife"] alimony by approximately 400%. We reverse and remand because the Former Wife improperly abused legal processes and the record does not support any basis to deviate from the well-established rule that alimony is to be determined based upon the prior standard of living established during the marriage, regardless of a postdivorce increase in the financial ability of the payor spouse.
In 1970, the parties and their then-minor children came to the United States from Hungary with virtually nothing. The Former Husband earned $3.50 an hour and the parties lived in the homes of various family friends. At the time of the dissolution in 1974, the parties' net worth was $1,350, and the Former Husband's annual salary was $10,400. The Former Wife, who was unemployed, was awarded child support and $129 per month in permanent alimony. Thereafter, she moved with the parties' two children to California.
In 1983, the children returned to live with the Former Husband after the Former Wife suffered a nervous breakdown and lost her job. The Former Husband worked during this time repairing and fixing apartments, and eventually was able to buy a small apartment building from saving and investing his earnings.
When the Former Wife's unemployment compensation ceased in 1985, she filed an alimony modification action. The Former Wife was granted a modification increasing her alimony to $430 per month based, in part, upon her inability to work. The evidence presented during this proceeding revealed the Former Husband had by this time acquired three more apartment buildings.
Following the 1985 modification hearing, the Former Husband acquired two additional apartment buildings. By virtue of his frugal lifestyle and savings, the Former Husband was able to renovate the apartment buildings, increase the rent rolls, and use the proceeds to satisfy the mortgages. The Former Wife returned to work, but thereafter injured her shoulder and filed a claim for social security disability. She was eventually found to be disabled within the meaning of social security regulations, more by reason of emotional impairment than by physical impairment. In 1995, she was awarded $61,215 of workers' compensation benefits.
In December of 1996, twenty-two years after the parties divorced, the Former Wife again sought an upward modification in alimony. The Former Wife appeared in proper person below and was assisted by her adult son Laszlo, an unemployed college "drop-out" in his mid-thirties.
Throughout the proceedings, the trial judge repeatedly admonished both the Former Wife and Laszlo for their improper and disruptive conduct. The trial judge found that Laszlo had fueled hostilities between the parties and was the motivating *711 force behind the Former Wife's plethora of irrelevant and frivolous papers.[1]
It is clear that the majority of the Former Wife's arguments were devoted to relitigating the parties' more than twenty year old divorce case and, in the words of the trial judge, her behavior made it "impossible to retain any semblance of order in the proceedings." The Former Wife made unending speeches about how the Husband had treated her during the marriage, refused to remain seated, refused to answer questions, interrupted the trial judge, claimed that she had not seen documents, told the Former Husband's attorney that his questions were "stupid," and threatened to kill herself and "make everybody happy."[2]
The Former Wife also improperly engaged in self-help by unilaterally filing claims of liens against real estate owned by the Former Husband, in order to prevent him from being able to deal with his investment property. Three separate hearings were required to have the liens removed.
By the time of the final hearing in 1998, the evidence revealed that the Former Wife had spent the worker's compensation award, and, in addition to her alimony and a small pension, was receiving $528 per month in social security disability benefits. The Former Husband's monthly income was now $5,987 per month. Previously, he had voluntarily agreed to temporarily increase the Former Wife's alimony an additional $300 a week, pending final hearing.
At the final hearing, the Former wife continued to engage in disruptive behavior, obviously using the court as a forum to vent her hostility and rage toward the Former Husband:
The Court: Stop. I don't want to hear Ma`am. Ma`am. It is time, ma'am, it's time you took responsibility for yourself. Ma`am, stop. Justma'am you are not going to be speaking to your former husband across the table in this courtroom. If you do I'm going to hold you in contempt of court. Stop.
The Wife: He make the word first.
The Court: Ma`am, he hasn't said a word.
The Wife: He did.
The Court: Ma`am, he has not said a word. He has sat there absolutely quiet.
. . .
The Court: I want to try and focus this hearing. And nobody here can take this much longer, including the Judge.
It is manifestly obvious the trial judge was faced with a daunting task in controlling the court proceedings. At the conclusion of the proceedings, the trial court entered an order which increased the alimony to *712 $2,000, and required the Former Husband to secure the alimony obligation with a $200,000 mortgage on his commercial properties.[3]
First, it is well established that alimony may not be used as a vehicle to enable a recipient spouse to share in the post-dissolution "good fortunes" of the payor spouse. See Irwin v. Irwin, 539 So.2d 1177 (Fla. 5th DCA 1989). Where modification is sought, the level of need of the recipient spouse is based upon the standard of living the parties' experienced during the marriage. See Walton v. Walton, 537 So.2d 658 (Fla. 1st DCA 1989); Shrine v. Shrine, 454 So.2d 26 (Fla. 1st DCA 1984), rev. denied, 461 So.2d 116 (Fla.1984). As noted in Lanier v. Lanier, 594 So.2d 809, 811 (Fla. 1st DCA 1992)(citing to Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980)): "[T]he former spouse's needs and necessities of life are to be determined as they were established during the marriage. The prior standard of living used to determine support generally is that last shared by the spouses."
Since the level of need must be measured by the standard of living the parties established during the marriage, there is a limited class of cases where increased financial ability of the payor is germane. In situations where a higher need existed at the time of the initial award based upon the standard of living maintained during the marriage, and that higher need could not be met, it makes sense to grant an upward modification where there has been a substantial postdivorce increase in the financial ability of the paying spouse. See Bedell v. Bedell, 583 So.2d 1005, 1006 (Fla. 1991).
The only other situation warranting such an increase would be one involving "extraordinary circumstances." See Bedell v. Bedell, 583 So.2d 1005, 1007 (Fla.1991). The Florida Supreme Court acknowledged in Bedell that an upward modification in alimony may be ordered based upon proof of a postdivorce substantial increase in the payor's financial ability where no increased need is shown. However, the court cautioned that where no increased need is shown based upon the standard of living during the marriage, such an award will be upheld "only in extraordinary cases where the equitable considerations were particularly compelling." Bedell v. Bedell, 583 So.2d at 1007.
Here, neither the trial court's order nor the record supports a finding of extraordinary circumstances. In the absence of a showing of increased need, as based upon the standard of living established by the parties during the marriage, specific findings of extraordinary circumstances and compelling equitable considerations are required to support an upward modification based upon postdivorce increase in the financial ability of the payor spouse. See Bedell v. Bedell, 583 So.2d at 1007.
Accordingly, the alimony award is reversed, see Bedell v. Bedell, 583 So.2d at 1005, as well as the order requiring the Former Husband to secure the alimony obligation by a mortgage on his commercial properties, see Burkhart v. Burkhart, 731 So.2d 733 (Fla. 1st DCA 1999).
In determining the award must be reversed, we have not overlooked the difficulties faced by the trial judge and the fact that the Former Wife misused the post-dissolution proceedings as a weapon for harassment.[4] The Former Wife is entitled *713 to pursue any rights she may have to an increase in alimony. The Former Wife is not entitled to use her alimony rights as a vehicle to harass the Former Husband through abuse of legal processes, and there is no excuse for any party to utilize self-help in the context of any proceeding. To allow such abuses of legal process to go unsanctioned under these circumstances is a sure guarantee of never-ending improper litigation proceedings.
We recognize the trial judge was confronted with a situation which spiraled out of control and simply got worse as the proceedings continued. However, especially in the context of acrimonious post-dissolution proceedings, a trial judge has a duty and an obligation to control courtroom proceedings and to ensure legal processes are not abused.[5] No one has the right to abuse the judicial systemor another party.
We caution parties and counsel that dissolution and post-dissolution proceedings are not to be used as forums for a vindictive spouse to meet his or her own emotional need to inflict retribution. Furthermore, engaging in illegal alternatives such as self-help to address conflicts in dissolution matters will be sanctioned. Parties in a divorce proceeding are entitled to be secure in the knowledge that they can move on with their lives without being forever beholden or harassed by a former spouse. They are also entitled to be secure in the knowledge that the legal system will preserve and protect their valid rights.
Reversed.
NOTES
[1] The trial judge's comments are revealing:

I'm satisfied that [the Former Wife's] son, Laszlo, is the driving force behind this litigation and has pumped up her expectations beyond reality. I am satisfied that [the Former Husband] has no obligation to contribute to the support of his thirty-two year old son.
. . .
[The Former Wife] is entitled to live with some amount of dignity, not having [the Former Husband] support this thirty-two year old who is fueling the flames of this case, and who has been doing all of this work for the case, and has been playing lawyer although he is not licensed. If he would only exert the efforts that he used in this case and get some kind of constructive job it would certainly help things an awful lot, I'm sure, but that is besides the point.
[2] The overwhelming burden the trial judge was faced with is perhaps best reflected by her own "appeal" to this court:

[F]or the Third District if they ever see this transcript, this is about the most difficult hearing I have ever had to conduct because [the Wife] thinks she knows more than anybody, any lawyer about what should be done in her case. She does not listen to court instructions. She does not answer questions directly. She's bringing things into court for the first time without having shown counsel. It is grossly unfair. I am trying to bend over backwards to be fair in this case and it is increasingly difficult.
[3] As noted earlier, the parties were divorced in 1974 at which time their total net worth was $1,350, and the Former Husband was supporting a family of four on a yearly salary of $10,400. The increase to $2,000 in alimony per month, twenty-four years after the divorce, is more than double the total income of the entire family at the time of the original dissolution action.
[4] Equally disturbing is the Former Wife's resort to lawless self-help in deciding to improperly place a lien on all of the Former Husband's properties. An emergency hearing was required and eventually the liens were removed.
[5] Where, as here, a trial judge's admonitions such as "sit down," "keep your mouth shut," and "listen to me," do not work, the party can be removed from the courtroom. Where a party's conduct or pleadings reflect abuse of process, the trial judge can enter sanctions such as dismissing the case, striking the pleadings, or assessing attorney's fees and costs.