797 So.2d 1282 (2001)
Stanley GOODMAN, Appellant,
v.
Leslie Ruth GOODMAN, Appellee.
No. 4D00-1032.
District Court of Appeal of Florida, Fourth District.
October 31, 2001.
*1283 Neil B. Jagolinzer of Christiansen & Jacknin, West Palm Beach, for appellant.
Barbara J. Compiani of Caruso, Burlington, Bohn & Compiani, P.A., and Brody, Cohen & Winig, P.A., West Palm Beach, for appellee.
WARNER, J.
The husband appeals from a final judgment of dissolution of marriage, challenging the trial court's award of alimony on three grounds. First, he claims that the award effectively requires him to spend the principal of his non-marital inheritance to provide alimony at the level ordered by the court. Second, he contends that the alimony award was excessive in light of the parties' standard of living throughout most of the marriage. Third, he objects to the court's failure to impute income to the wife. Because each of these is within the discretion of the trial court, and there is both evidence and reason to support the court's award, we affirm.
The parties were married in New Jersey in 1977. It was a second marriage for both of them, and each had children by their prior marriages. The husband worked for his parents' haberdashery store both before and during the parties' marriage, and the wife was a part-time teacher and sales clerk at a department store. They actually disagree on the characterization of their lifestyle. The husband describes it as modest, within the means of his $48,000 salary. As characterized by the wife, their lifestyle included many trips to Europe and the Caribbean and the purchase of new cars, including Cadillacs, a Lexus, a Jaguar, a Corvette, a Mercedes, etc. Most of their household purchases were in cash, as the husband was paid in cash from his father's store.
In 1995, the husband inherited a net estate from his deceased parents of $3.1 million. The parties decided to move to Florida and, according to the wife, "we agreed that we both would be retired and we both would not work and enjoy this lifestyle." They bought a $400,000 condominium, bought clothes at Saks, bought expensive cars, and took more trips. They spent at least $15,000 per month.
In 1999, the wife filed for divorce. Prior to the trial of the action, the parties agreed on the equitable distribution of the marital assets, which gave the wife $460,000 ($285,000 in cash). The main issue presented to the trial court was an award of alimony to the wife. Each party *1284 presented expert accountants to determine both the wife's needs and the husband's ability to pay, based on the investment strategies for the husband's inheritance. After hearing the evidence, the trial court prepared a detailed final judgment.
The court evaluated each criteria for the award of alimony under section 61.08, Florida Statutes (1999). It found that the parties' standard of living for most of the marriage was "comfortable, middle-class" and after the receipt of the husband's inheritance, it was "affluent." The marriage was a long-term one, and at the time of the dissolution the husband was 69 years old and the wife was 53. As to the necessity and ability of the wife to find appropriate employment, the court found that no evidence was presented regarding the wife's ability to be rehabilitated. The wife was never self-supporting during the marriage. Although she taught and was a part-time sales clerk, no evidence was offered about the wife's present ability to obtain employment. Therefore, the court declined to impute earnings to the wife.
Addressing the issue of the sources of income available to the husband, the most hotly contested issue in the case, the court traced the history of the husband's inheritance. It noted that the husband was riskaverse and followed an extremely conservative investment strategy that brought only a 4.87% return per year. This decision resulted in monthly income of only $9,259, which was substantially less than he would enjoy if he invested in slightly more speculative investments, such as 90-day treasury bills or municipal bonds. The court noted that the husband was unsophisticated, had only a high school education, and followed the investment strategy of his father. The court rejected the wife's request to attribute a greater income to him based upon a different investment strategy, concluding that this was the strategy utilized during the marriage and was not designed to deprive the wife of her ability to obtain sufficient monthly support. The court did not find the husband's investment decisions to be unreasonable.
Noting that income alone is not the criterion for determining the husband's ability to pay, the court then considered all of the husband's resources, both marital and non-marital, relying on section 61.08(2)(d). The court found that during the marriage the husband invaded the principal of his inheritance to support the parties' more affluent lifestyle. Furthermore, part of his inheritance was two rental properties in New Jersey, which he sold during the divorce and invested using his conservative strategy. This had the effect of reducing his net monthly income considerably. Because the husband had used his principal to support the parties' lifestyle during the intact marriage, the court determined that it was not unreasonable to look to his non-marital inheritance asset to provide funds to support the wife in accordance with the parties' standard of living.
The court determined that, in accordance with the wife's accountant's testimony, the wife needed, and it awarded, $7,000 a month in alimony in order to maintain the standard of living established by the parties. Because the court also found that the husband's net income (after payment of a prior alimony award) was only $8,826, the husband is required to nearly exhaust his present income in order to pay the alimony award. It also awarded attorney's fees and some costs to the wife. However, the sole issue in this appeal concerns the award of alimony.
The husband argues that because the court found his investment strategy was reasonable and generated an income of only $8,826 available for the payment of alimony, an award of $7,000 clearly required *1285 the husband to invade the principal of his non-marital inheritance in order to pay the alimony. Thus, he claims the effect of the award makes the wife a beneficiary of his parents' estate and amounts to an impermissible equitable distribution to the wife of a non-marital asset. He cites to Weimer v. Weimer, 677 So.2d 86 (Fla. 4th DCA 1996), but that case is inapposite. In that case, the trial court had provided an unequal distribution of marital property which it justified by stating that it would be balanced with a permanent alimony award. We held that to be error, as equitable distribution is to be accomplished prior to any award of alimony. See id. at 88.
The husband also relies on Davis v. Davis, 641 So.2d 156 (Fla. 5th DCA 1994). That case is very similar to the present one. The parties had existed on a very modest income until the husband's parents passed away, and he inherited a substantial sum of money. The marriage disintegrated soon thereafter, and in stating the facts the appellate court pointedly noted that "[t]he trial court did not indicate that the parties lived together thereafter long enough to establish a new standard of living." Id. at 157. The court disapproved a lump sum alimony award to the wife, which was not necessary to sustain her standard of living and was the trial court's overt attempt to accomplish a partial distribution of the inheritance by calling it lump sum alimony. See id.
In this case, unlike Davis, the trial court specifically found that a more affluent standard of living had been established after the husband received his inheritance. To achieve this lifestyle, the trial court found the husband spent part of his principal. While the husband contests this finding, there was evidence to support it. Not only did the husband make contradictory statements as to whether he spent some of his principal when he sold the rental properties, but also a simple calculation of the amount of money the parties were spending was far more during the last three years of the marriage than the level of income attributed to him by his accountant.
Although we might agree as a general rule that a party does not have to invade the principal of non-marital assets in order to support a spouse at a standard of living never achieved during the marriage and where the parties never spent down the principal prior to dissolution, that situation is not present here. Where, as here, the parties' standard of living required invading the principal of non-marital assets, section 61.08(2)(d) permits the trial court to look to all the financial resources of the parties, including "the nonmarital ... assets... distributed to each." (Emphasis added). The trial court's findings are supported by competent, substantial evidence, and its decisions are not an abuse of discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1202-03 (Fla.1980).
The husband also challenges the trial court's use of the parties' standard of living in Florida, which was only established a few years before the divorce. Generally, however, "[i]n fixing the amount of support payments, the standard of living to be used is that last shared by the spouses during the marriage." Bible v. Bible, 597 So.2d 359, 361 (Fla. 3d DCA 1992); accord Szuri v. Szuri, 759 So.2d 709, 712 (Fla. 3d DCA 2000); Lanier v. Lanier, 594 So.2d 809, 811 (Fla. 1st DCA 1992). In fact, in Cardillo v. Cardillo, 707 So.2d 350, 350-51 (Fla. 2d DCA 1998), the court reversed the trial court's determination of alimony where the trial court refused to examine the most recent standard of living "a standard they had enjoyed for over two years." (Emphasis added). Here, the increased lifestyle was enjoyed by the parties *1286 for about three years before the divorce, and according to the wife it was their joint decision to increase their standard of living. Moreover, in this case, one view of the evidence could be that their lifestyle actually only increased modestly. Before the inheritance, the parties traveled to Europe and drove Cadillacs, Lexuses, and Jaguars. After the inheritance, the parties traveled to Europe and the wife drove a Mercedes convertible. Since there was no analysis of their actual expenses prior to the receipt of the inheritance, it would have been difficult for the court to determine in dollars what the standard of living was for the large portion of the marriage. Given the wife's description of their pre-inheritance lifestyle, substantial expenses were obviously made, probably in excess of the husband's pre-inheritance income.
In sum, there is ample evidence of the parties' lifestyle during the years preceding the dissolution. The trial court appropriately considered that lifestyle and made an award of alimony consistent with it. The court acted well within its discretion.
Finally, the husband objects to the trial court's failure to impute employment income to the wife. This argument is meritless. The court specifically addressed this issue but found no evidence as to whether the wife was employable and at what income level. While the wife had employment in the past, there was no showing that employment in similar fields was available in Florida and at what income level. The husband had the burden of providing evidence on this issue and failed to do so. The court did not err.
For the foregoing reasons, we affirm the final judgment of the trial court.
HAZOURI, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I concur with the majority because the trial court's resolution of the issues was well within its discretion. Testimony at trial disclosed that the post-inheritance lifestyle of the couple consumed approximately $15,000 per month. The $7,000 award of alimony is 46.67% of the couple's pre-divorce spending. A small return on the cash portion of the wife's equitable distribution raises her monthly income to at least 50% of the marital level. Assuming the husband returns to his more frugal lifestyle and can manage on $7,000 a month, the requirement that he invade the principal of his inheritance will deplete it in forty-six years, if he maintains his conservative investment style. He was sixty-nine years old at the time of the dissolution. Because the parties chose a lifestyle that modestly depleted the principal prior to the divorce, it was reasonable for the trial court to employ a similar financial approach in the final decree. See § 61.08(2)(d), Fla. Stat. (1999).